494

(No. 4997-)

LEONARD RUBIN and WESTERN STATES MUTUAL INSURANCE COMPANY, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed July 24, 1964.*

WHAM AND WHAM, Attorneys for Claimants.

WILLIAM G. CLARK, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimants, Leonard Rubin and the Western States Mutual Insurance Company, seek recovery of the sums of $50.00 and $571.35, respectively, for damages allegedly sustained on January 1, 1961 to an automobile, owned and operated by Leonard Rubin, and insured for collision loss by the Western States Mutual Insurance Company.

The evidence shows that on January 1, 1961, at 12:30 A.M., Leonard Rubin was operating his 1961 Oldsmobile in a southerly direction on U.S. Route No. 51, a short distance south of the village limits of Shobonier in Fayette County, Illinois. Respondent had relocated Route No. 51 to the east and southeast of the original Route No. 51. Respondent had also constructed a curve and an approach leading from the old Route No. 51 in a southeasterly direction to connect that route with the highway on the relocation of said Route No. 51, which bypassed the Village of Shobonier to the east. Apparently a ditch had been cut through the old route at the southerly end of the curve from the old route to the relocated route.

Leonard Rubin testified that he is a farmer, 40 years old, and lives in Fayette County, Illinois. On January 1, 1961, he owned a new 1961 Oldsmobile automobile in good operating condition. He had obtained an automobile col-

lision insurance policy with the Western States Mutual Insurance Company, which contained a $50.00 deductible clause.

On the date in question, Claimant Rubin was driving his automobile from Shobonier to Sandoval on Route No. 51 in a southerly direction. He was accompanied by Marvin Rubin and William Sachan, who were seated alongside him in the front seat. Claimant stated that he had "a few beers" that evening, but that he and his companions were sober. He knew that a road was being built, but did not know that the old road had been terminated by building a ditch across it. He was driving about 50 to 55 miles per hour when he first saw the ditch across the road. Apparently there was about fifteen feet of bare ground from the southernmost edge of the pavement to the ditch. There were no signs or any warning signals showing that the road terminated. He applied his brakes, but was going too fast to stop, and went into the ditch, which was about seven or eight feet wide, and four feet deep, his only alternative being to turn and take a chance of rolling the car. No one was injured. He left his car, and returned to the scene of the accident the next morning. The accident caused damage represented by a paid automobile repair bill of $625.31. After the accident, Claimant Rubin noticed that the road on which he was traveling did connect with the new route by a sharp turn to the left from the direction in which he was heading.

Leonard Torbeck testified that he operated a body shop, and was familiar with the automobile owned by claimant. He stated that this automobile was in good condition before the accident. He recovered the car from across the ditch, which he estimated to be about four feet deep. Torbeck testified that the amounts charged for the repair of the car were fair and reasonable.

Ewald Kruenagel, representing the Western States Mutual Insurance Company, stated that he examined the scene of the accident on January 1, 1961, and did not see a sign along the stretch of road in question. On January 8, 1961, he returned and observed a sign, which had apparently been installed subsequent to the accident, with an arrow pointing toward the new highway. He testified that Western States Mutual Insurance Company paid the amount of $625.31 less $50.00 to Torbeck Garage and Leonard Rubin.

Mr. Marvin Rubin testified that he was with Leonard Rubin at the time of the accident, and that Leonard was sober. Claimant was driving 50 or 60 miles per hour on dry pavement when the road suddenly came to a dead end. There were no warning signs to indicate that there was a dead end or a ditch, or that the road was going to turn.

William Sachan testified that, in his opinion, claimant was sober at the time of the accident. He did not know that there was a ditch dug across the road. The night was dark and cloudy, and the pavement was dry. At the time of the accident old Route No. 51 was paved with regular cement, as it had been for years.

Paul Petard, a Civil Engineer with the Division of Highways District Office, testified that he was resident engineer for the State on the Route No. 51 bypass. The connection in question, where old Route No. 51 joined with the new bypass, was completed about October 14, 1960. At the time of the accident, the pavement of old Route No. 51 from Shobonier up to the point where the old pavement was torn out was still in the same condition, as it was before the project ever started. In 1961, blacktop was put on the new connection. There was a stop sign up at the entrance of the connection with old Route No. 51 and

the new one, about 270 feet from where old Route No. 51 was terminated. Mr. Petard had left the project on December 9, 1960. The old pavement was to be removed, and some had already been removed when he left the job. Petard further stated that there could have been an open ditch at the north end of the removed pavement.

There was no evidence that claimant failed to exercise due care, or that he was intoxicated, as respondent contends. According to witnesses, he was sober, and was proceeding at a speed consistent with driving conditions.

In the opinion of this Court, respondent was in fact negligent, and its negligence was the proximate cause of the accident. Claimant could not reasonably apprehend that the old Route No. 51 would end abruptly with a ditch across the road. There were no signs warning of the connection with the new route, or the termination of old Route No. 51 at that point. The roads were not differentiated by having blacktop put on the route, which connected with the new road, but the surface of concrete remained the same up to the point where the road ended, about 15 feet before the ditch. This condition had apparently existed for several weeks, since some of the old pavement had been removed by the first week of December. There was no barricade or signal warning of either the end of the pavement, or of the ditch cut across the road.

The case of *Kerr* vs. *State of Illinois*, 23 C.C.R. 211, also involved a change of location of an old highway where the State had failed to maintain signs designating the connection with the old route. In holding respondent liable, the Court stated at page 217:

". . .where the State is in the process of repairing, removing, or relocating a highway, it is duty-bound to use reasonable care in warning the traveling public of a hazard, which it has voluntarily created." (Citing *Dale Riggins* vs. *State of Illinois*, 21 C.C.R. 434, 438.)

498

Claimant, Leonard Rubin, is hereby awarded $50.00, and the Western States Mutual Insurance Company is awarded the sum of $571.35.